RECEIPT #
AMOUNT $
SUMMONS ISSUED
LOCAL RULE 4.1
WAIVER FORM
MCF ISSUED
BY DPTY CLK
DATE

FILED
IN CLERKS OFFICE

**UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS**

2004 JUN -4  P 3: 20

U.S. DISTRICT COURT
DISTRICT OF MASS.

| | |
|---|---|
| CHARLES ROBINSON, Individually and On Behalf of All Others Similarly Situated, | Civil Action No. |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | |
| VASO ACTIVE PHARMACEUTICALS, INC., JOHN J. MASIZ AND JOSEPH FRATTAROLI, | **JURY TRIAL DEMANDED** |
| Defendants. | 04 11221 RCL |

Plaintiff, Charles Robinson, individually and on behalf of all other persons similarly situated, by its undersigned attorneys, allege upon personal knowledge as to itself and its own acts, and information and belief as to all other matters, based upon, *inter alia,* the investigation conducted by and through its attorneys, which included, among other things, a review of public documents and announcements made by the defendants, Securities and Exchange Commission ("SEC") filings, and press releases regarding Vaso Active Pharmaceuticals ("Vaso Active" or the "Company"), and plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.    This is a class action brought by plaintiff on behalf of itself and a Class (defined in paragraph 37, below) consisting of all other persons and entities who purchased Vaso Active common stock during the period from December 11, 2003 through March 31, 2004 (the "Class Period"), to recover damages caused by the defendants' violation of federal securities laws.

2.      Vaso Active manufactures, markets and sells over-the-counter ("OTC")
pharmaceutical products. According to Vaso Active, the effectiveness of its products have been
significantly enhanced through the incorporation of the Company's proprietary vaso active lipid
encapsulated ("VALE") transdermal delivery technology.

3.      During the Class Period, the defendants materially misrepresented that
"independent" clinical trials confirmed that its foot cream product - Termin8 - formerly known
as deFEET, was a "remarkably effective cure" for athlete's foot. Specifically, Vaso Active
represented that clinical trials were conducted by "independent physicians" and reviewed by the
New England Medical Center, in Boston, MA. The "independent physicians" who supervised
the study was in fact a podiatrist selected by Vaso Active's parent company, BioChemics Inc.
("BioChemics"). In addition, the New England Medical Center did nothing more than analyze
the statistical information gathered by BioChemics -- something the center does for paying
customers. The medical center confirmed via news articles, that it was unable to draw any
conclusions about the product's effectiveness since it had no role in the selection of patients and
in gathering the evidence.

4.      The true facts, which were known by the defendants but actively concealed from
the investing community during the Class Period included: (a) Vaso Active claims that its
"clinical trial" was supervised by independent physicians and analyzed by the New England
Medical Center in Boston" was materially misleading in that the New England Medical Center
had nothing to do with the study associated with the "clinical trial, the New England Medical
Center was unable to draw conclusions regarding product effectiveness and played no role in the
selection of patients and gathering evidence; and (b) The American Association of Medical Foot
Specialists (the "Association") and its "endorsement" of deFEET was of little, if any, value. The

2

Association is not widely recognized. In addition, in exchange for the "endorsement", Vaso Active was asked to donate towards the Association's scholarship program.

5.     On March 31, 2004, the SEC halted trading in the Company's stock. The SEC release questioned the accuracy of assertions made by the Company in Vaso Active's press releases, annual report, registration statement and public statements to the investing public concerning FDA approval of certain key products.

## JURISDICTION AND VENUE

6.     The claims alleged herein arise under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78j(b) and 78t(a), and Rule 10b-5, 17 C.F.R. § 240.10b-5 promulgated thereunder.

7.     This Court has jurisdiction over the subject matter of this action pursuant to Section 27 of the Exchange Act, 15 U.S.C. §78aa and 28 U.S.C. § 1331.

8.     Venue is proper in this District pursuant to Section 27 of the Exchange Act and 28 U.S.C. §1391(b). Many of the acts and transactions alleged herein, including the preparation and dissemination to the investing public of false and misleading information, occurred in substantial part in this District. Moreover, the Company maintains its headquarters in this District.

9.     In connection with the acts, transactions and conduct alleged herein, defendants, directly and indirectly, used the means and instrumentalities of interstate commerce, including the United States mails, interstate telephone communications and the facilities of the national securities exchanges.

## THE PARTIES

10.    Plaintiff, Charles Robinson, purchased shares of Vaso Active common stock during the Class Period as detailed in the attached Certification and has been damaged thereby.

11.    Defendant Vaso Active is a Delaware corporation and maintains its principal executive offices at 99 Rosewood Drive, Suite 260, Danvers, MA 01923. Vaso Active is an early stage company focused on commercializing, marketing and selling OTC pharmaceutical products, with a particular focus on drugs that incorporate the VALE transdermal delivery technology.

12.    Defendant John J. Masiz ("Masiz") was, at all relevant times, Chairman, President and Chief Executive Officer of the Company.

13.    Defendant Joseph Frattaroli ("Frattaroli") was, at all relevant times, Chief Financial Officer of the Company.

14.    Defendants Masiz and Frattaroli are collectively referred to hereafter as the "Individual Defendants".

15.    By reason of their management positions, and/or membership on Vaso Active's Board of Directors (the "Board"), and their ability to make public statements in the name of Vaso Active, the Individual Defendants were and are controlling persons, and had the power and influence to cause (and did cause) Vaso Active to engage in the unlawful conduct complained of herein.

16.    By reason of their positions with the Company, the Individual Defendants had access to internal Company documents, reports and other information, including the adverse non-public information concerning the Company's financial condition and business, and attended

4

management and/or Board meetings.   The Individual Defendants were responsible for the truthfulness and accuracy of the Company's public filings and press releases described herein.

17.    Vaso Active, and the Individual Defendants as officers and directors of a publicly-held company, had a duty to promptly disseminate truthful and accurate information with respect to the Company and to promptly correct any public filings or statements issued by or on behalf of the Company which had become false or misleading.

18.    Each of the defendants is liable as a participant in a fraudulent scheme and course of business that operated as a fraud or deceit on purchasers of Vaso Active common stock by disseminating materially false and misleading statements and/or concealing material adverse facts.   The scheme: (a) deceived the investing public regarding Vaso Active's business, operations, management and the intrinsic value of Vaso Active common stock; (b) allowed the Company to complete a stock offering thereby generating over $8 million in proceeds; (c) allowed the Company to complete a private placement with an institutional investor for $7.5 million; and (d) caused plaintiff and other members of the Class to purchase Vaso Active common stock at artificially inflated prices.

19.    Each of the defendants knew or recklessly disregarded that the false and/or misleading statements and omissions complained of herein would adversely affect the integrity of the market for the Company's stock and would cause the price of the Company's common stock to become artificially inflated.   Each of the defendants acted knowingly or in such a reckless manner as to constitute a fraud and deceit upon plaintiff and the other members of the Class.

## SUBSTANTIVE ALLEGATIONS

20.     On December 11, 2003, the beginning of the Class Period, the Company issued a

press release announcing the successful completion of its initial public offering ("IPO")

generating approximately $7.25 million through the offering of 1,450,000 shares of Class A

common stock at a price of $5.00 per share.  The registration statement (the "Registration

Statement") filed with the SEC in connection with the IPO was signed by the defendants Masiz

and Frattaroli.  Concerning Vaso Active's products, the Registration Statement stated, in relevant

part, as follows:

> Although all of our product candidates will be entering established markets, they
> will be distinct and unique among existing products in those markets in that they
> will all incorporate the VALE technology.  We intend to market these products
> candidates using this distinction in much the same way as our current products
> have been marketed.  Since these product candidates are in the early development
> stage, we are not able to predict when these product candidates will be ready for
> distribution and sale, if ever.

***

21.     Additionally, concerning certain products and clinical studies conducted by Vaso

Active, the Registration Statement stated, in relevant part:

> Osteon and Athlete's Relief will now be marketed, distributed commercialized
> and sold by us in the United States.  During the course of the 12 month period
> immediately following this offering, all deFEET branded product currently in
> circulation will either be sold or removed from circulation and replaced with an
> identical product which will be commercialized, marketed and sold by us under
> the name Termin8 and/or Xtinguish.  The formulation and functionality of
> Termin8 and Xtinguish will be identical to that of deFEET.
>
> All three of these products have been through the research and development, pre-
> clinical study and clinical trial stages and have received FDA approval.  They are
> either currently being marketed and commercialized or will enter the marketing
> and commercialization phase upon the consummation of this offering. [Emphasis
> added.]

6

22.    Additionally, concerning the clinical studies completed specifically on Termin8,

formerly known as deFEET, the Registration Statement stated, in relevant part:

> deFEET is a topically-applied, transdermal athlete's foot anti-fungal medication
> designed to eliminate athlete's foot infection in less than 10 days. It employs the
> VALE drug delivery system to effectively and efficiently deliver a mild
> antifungal agent called Tolnaftate into the skin surrounding the affected area. In a
> pilot clinical trial, supervised by independent physicians and analyzed by the New
> England Medical Center in Boston, MA, 20 severely infected athlete's foot
> patients were treated and studied over a 42-day period. There were two groups in
> the study, one treated with deFEET and other with Schering-Plough's Tinactin®.
> In this study, deFEET eliminated the infection in 90% of the test group in 7 days
> and 100% of its patient population in 10 days. Tinactin®, which also uses
> Tolnaftate in the same concentration as deFEET required 42 days to cure its first
> patient. These results demonstrate the ability of the VALE technology to deliver
> Tolnaftate much more effectively than a product not utilizing VALE technology.
> [Emphasis added.]

23.    On December 16, 2003, Vaso Active announced that it had successfully closed on

the placement of all of its over-allotment shares. The total over-allotment shares were 217,500

shares of Class A common stock, placed at $5.00 per share. Combined with the 1,450,500 shares

of Class A common stock placed during the Vaso Active's IPO, the Company raised

approximately $8,337,500 in gross proceeds.

24.    On February 19, 2004, Vaso Active announced a 3 for 1 stock split of its common

stock. The release stated in relevant part:

> Vaso Active Pharmaceuticals, Inc. of Danvers, Massachusetts, announced today
> that the Board of Directors has declared a 3 for 1 stock split effective in the form
> of a 200 percent stock dividend payable on or about March 5, 2004 to holders of
> record of both Class A and Class B common stock as of February 23, 2004.
> Under the terms of this stock split, holders of the Company's Class A and Class B
> common stock will receive a dividend of two shares of Class A and Class B
> common stock for every one share of Class A and Class B common stock held on
> that record date. The dividend will be paid in authorized but unissued shares of
> Class A and Class B common stock of the Company.

> The Company anticipates that the combined amount of issued and outstanding
> shares of both the Class A and Class B common stock after the split will be

7

increased from 3,428,000 shares to 10,284,000 shares.

25.    In addition, Masiz stated that the stock split was a reaction to strong institutional

demand for Vaso Active shares, commenting, in relevant part, as follows:

> One of the ways many institutions measure investment appeal is through the
> liquidity of a security.  Recently, there has been significant demand for our
> common stock at the institutional level.  However liquidity has proved to be an
> obstacle.  To help resolve this, the Board of Directors has declared this 3-for-1
> stock split to increase our liquidity to the public market place, thus enhancing our
> securities' appeal to both retail and institutional investors.

26.    On March 17, 2004, Vaso Active announced that it had completed a private

placement transaction in the amount of $7,500,000 with an institutional investor.  The investment

which is in the form of an 18 month 2% Convertible Note, is convertible into shares of Class A

common stock at a conversion rate of $9 per share, at the option of the investor.  In addition, the

Company issued to the investor warrants to purchase 166,667 shares of Class A common stock at

an exercise price of $8.75 per share.  Defendant Masiz, commented positively on the transaction,

stated, in relevant part, as follows:

> The ability to secure additional funds through the completion of this private
> placement gives Vaso Active significant new working capital to augment the
> working capital derived from its IPO.  This will enhance Vaso Active's capital
> base with which to operate and will permit the Company to  take advantage of
> strategic opportunities that arise in the course of growing our business.  In
> addition, the execution of this agreement at a premium to the current market price
> of our common stock underscores the value of our technology to a material
> investor. [Emphasis added.]

27.    On March 26, 2004, Vaso Active filed its annual report with the SEC on Form 10-

KSB for the period ending December 31, 2003.  The annual report was signed by defendants

Masiz and Frattaroli.  The defendants represented, in relevant part, the following concerning its

Termin8 product:

Termin8 is a topically-applied, transdermal anti-fungal medication designed to eliminate athlete's foot infection in less than 10 days. Termin8 employs the VALE transdermal drug delivery system to effectively and efficiently deliver a mild anti-fungal agent called Tolnaftate into the skin surrounding the affected area. [Emphasis added.]

28.    Also, on March 26, 2004, TheStreet.com reported that during a conference to discuss Vaso Active's 2003 financial results and 2004 outlook, the Company said it expected sales to soar next year because of a number of "strategic" deals it has reached to market Termin8 and other lotions that use its "revolutionary" transdermal delivery system.

29.    The statements referenced above in ¶¶20 through 28 were each materially false and misleading when made as they failed to disclose and/or misrepresented the following material adverse facts which were then known to the defendants or recklessly disregarded by them:

(a)    The New England Medical Center only analyzed the Termin8 study, did not conduct a trial, and was unable to draw any conclusions as to Termin8's effectiveness.

(b)    The "clinical trial" lacked adequate control mechanisms, failing to comply with standards established to perform scientific research and could not be used to conclude Termin8's effectiveness or approvability.

(c)    The "clinical trial" was not independent but conducted by a podiatrist hand-picked by BioChemics.

(d)    The Association's "endorsement" deFEET was of little, if any, value. The Association is not widely recognized. In exchange for the "endorsement", VasoActive was asked to donate towards the Association's scholarship program.

(e)    as a result of the foregoing, the defendants statements concerning the

efficacy of the Company's products, as well as the Company's current and future financial prospects were lacking in a reasonable basis during the Class Period.

30.    On March 31, 2004, the SEC halted trading of the Company's stock through April 15, 2004, stunning the financial markets and investing community. The SEC press release questioned the accuracy of assertions made in Vaso Active's press releases, annual report, Registration Statement and public statements to the Company's investors.

31.    At the time the trading was halted, Vaso Active common shares were priced at $7.59 per share.

32.    On April 1, 2004, Reuters issued a press release entitled "UPDATE-SEC suspends trading in Vaso Active stock". The release stated in relevant part:

> U.S. securities regulators on Thursday halted trading of Vaso Active Pharmaceuticals Inc. a marketer of over-the-counter pharmaceuticals, through April 15.
>
> The Securities and Exchange Commission questioned assertions made by the Danvers, Massachusetts based company of regarding an FDA approval of certain key products, among other issues.
>
> ***
>
> The SEC said it questioned the accuracy of assertions made in the company's press releases, annual report, registration statement, and public statements to investors.

33.    On April 7, 2004, Vaso Active announced that the Company had received a letter from the Nasdaq Listing Investigations department concerning Vaso Active's compliance with Nasdaq listing requirements. In response to the Nasdaq letter, the Company stated that "In view of the substantial administrative and cash burdens being borne by the Company at this time, the Company has determined that it is in the best interest of shareholders to voluntarily cause its shares to be removed from Nasdaq. . ."

34.    On April 16, 2004, the SEC permitted the stock to resume trading on the over-the-counter bulletin board exchange at $1.99.

## SCIENTER

35.    The facts alleged herein, compel a strong inference that the defendants made materially false and misleading statements to the investing public with scienter in that the defendants knew that the public statements issued or disseminated in the name of the Company were materially false and misleading; knew or recklessly disregarded that such statements would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements as primary violators of the federal securities laws.  The Individual Defendants engaged in such a scheme to inflate the price of Vaso Active common stock in order to protect and enhance their executive positions.

36.    While defendants were issuing false and misleading statements about the Company and its business, Vaso Active completed an IPO whereby the Company generated over $8 million in proceeds and a private placement with an institutional investor whereby the Company generated approximately $7.5 million in proceeds.

## CLASS ACTION ALLEGATIONS

37.    Plaintiff brings this action as a class action pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3) on behalf of a class (the "Class") consisting of all persons and entities who purchased Vaso Active common stock during the Class Period, and who suffered damages as a result of defendants improper conduct.  Excluded are the defendants, any entity in which the defendants have a controlling interest or is a parent or subsidiary of or is controlled by the

Company, and the officers, directors, employees, affiliates, legal representatives, heirs, predecessors, successors and assigns of the defendants.

38.    The members of the Class are so numerous that joinder of all members is impracticable.  While the exact number of Class members is unknown to plaintiff at this time and can only be ascertained through appropriate discovery, plaintiff believes there are, at a minimum, thousands of members of the Class who traded during the Class Period.

39.    Questions of law and fact are common to all members of the Class and predominate over any questions affecting solely individual members of the Class.  Among the questions of law and fact common to the Class are:

      a)    whether the federal securities laws were violated by defendants' acts as alleged herein;

      b)    whether the Company issued false and misleading financial statements during the Class Period;

      c)    whether defendants acted knowingly or recklessly in issuing false and misleading financial statements;

      d)    whether the market prices of the Company's stock during the Class Period were artificially inflated because of the defendants' conduct complained of herein;  and

      e)    whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

40.    Plaintiff's claims are typical of the claims of the members of the Class as plaintiff and the other members of the Class each sustained damages arising out of the defendants' wrongful conduct in violation of federal law as complained of herein.

41.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class actions and securities litigation.  Plaintiff has no interests antagonistic to or in conflict with those of the Class.

42.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy since joinder of all members of the Class is impracticable. Furthermore, because the damages suffered by the individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for the Class members individually to redress the wrongs done to them.  Plaintiff anticipates no unusual difficulties in the management of this action as a class action.

43.    Plaintiff will rely, in part, upon the presumption of reliance established by the fraud on the market doctrine in that:

a)    defendants made public misrepresentations or failed to disclose material facts during the Class Period;

b)    such omissions and misrepresentations were material;

c)    the common stock of the Company traded in an efficient market;

d)    the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's stock; and

e)    plaintiff and the other members of the Class purchased Vaso Active common stock between the time the defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

44.    The market for Vaso Active common stock was open, well-developed and efficient at all relevant times.  As a result of these materially false and misleading statements and failures to disclose, Vaso Active common stock traded at artificially inflated prices during the Class Period.  Plaintiff and other members of the Class purchased or otherwise acquired Vaso Active common stock relying upon the integrity of the market price of Vaso Active common stock and market information relating to Vaso Active, and have been damaged thereby.

13

45.    Based upon the factors set forth in the preceding paragraph, plaintiff and the other members of the Class are entitled to the presumption of reliance upon the integrity of the market.

## NO SAFE HARBOR

46.    The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this complaint. Many of the specific statements pleaded herein were not identified as "forward-looking statements" when made. To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. Alternatively, to the extent that the statutory safe harbor does apply to any forward-looking statements pleaded herein, defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the particular speaker knew that the particular forward-looking statement was false, and/or the forward-looking statement was authorized and/or approved by an executive officer of the Company who know that those statements were false when made.

## COUNT I
### VIOLATION OF SECTION 10(b) OF THE EXCHANGE ACT AND
### RULE 10b-5 BROUGHT AGAINST ALL DEFENDANTS

47.    Plaintiff repeats and reiterates each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

48.    During the Class Period, defendants materially misled the investing public, thereby inflating the price of Vaso Active common stock, by publicly issuing false and misleading statements and omitting to disclose material facts necessary to make defendants'

statements, as set forth herein, not false and misleading. Said statements and omissions were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about the Company, its business and operations.

49.     At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by plaintiff and other members of the Class. As described herein, during the Class Period, defendants made or caused to be made a series of materially false or misleading statements about Vaso Active's business, prospects and operations.   These material misstatements and omissions had the cause and effect of creating in the market an unrealistically positive assessment of Vaso Active and its business, prospects and operations, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times. Defendants' materially false and misleading statements during the Class Period resulted in plaintiff and other members of the Class purchasing the Company's common stock at artificially inflated prices, thus causing the damages complained of herein.

50.     During the Class Period, defendants directly engaged in a common plan, scheme, and unlawful course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices, and courses of business which operated as a fraud and deceit upon plaintiff and the other members of the Class, and made various deceptive and untrue statements of material facts and omitted to state material facts in order to make the statements made, in light of the circumstances under which they were made, not misleading to plaintiff and the other members of the Class. The purpose and effect of the scheme, plan, and unlawful course of conduct was, among other things, to deceive the investing public, including plaintiff and the

other members of the Class, and to induce plaintiff and the other members of the Class to purchase Vaso Active common stock during the Class Period at artificially inflated prices.

51.    During the Class Period, the defendants, pursuant to said scheme, plan and unlawful course of conduct, knowingly and/or recklessly issued, caused to be issued, participated in the issuance of, the preparation and/or issuance of deceptive and materially false and misleading statements to the investing public as particularized above.

52.    As a result of the defendants' dissemination of and/or failure to correct the false and misleading statements set forth above, the market price of Vaso Active common stock was artificially inflated during the Class Period.  Unaware of the false and misleading nature of the statements described above and the deceptive and manipulative devices and contrivances employed by the defendants, plaintiff and the other members of the Class relied, to their detriment, on the integrity of the market price of the stock in purchasing Vaso Active common stock.  Had plaintiff and the other members of the Class known the truth, they would not have purchased Vaso Active common stock shares or would not have purchased them at the inflated prices that they did.

53.    Plaintiff and the other members of the Class have suffered damages as a result of the wrongs herein alleged in an amount to be proved at trial.

54.    By reason the foregoing, the defendants have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder and is liable to plaintiff and the other members of the Class for damages which they suffered in connection with their purchases of Vaso Active common stock during the Class Period.

**COUNT II**

**VIOLATION OF SECTION 20(a) OF THE EXCHANGE ACT
BROUGHT AGAINST THE INDIVIDUAL DEFENDANTS**

55.     Plaintiff repeats and reiterates each and every allegation contained in each of the foregoing paragraphs as if set forth fully herein.

56.     The Individual Defendants acted as controlling persons of the Company under the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their high-level positions, and active participation in and/or awareness of the Company's day-to-day operations, and/or intimate knowledge of the Company's expansion plans and implementation thereof, each Individual Defendant had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements that plaintiff alleges are false and misleading.  The Individual Defendants were provided with, or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged herein to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

57.     In particular, the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, are presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

58.     By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of the

wrongful conduct, plaintiff and the other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff, on its own behalf and on behalf of the Class, prays for judgment as follows:

(a)    Declaring this action to be a class action pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure on behalf of the Class defined herein;

(b)    Awarding plaintiff and the other members of the Class damages in an amount which may be proven at trial, together with interest thereon;

(c)    Awarding plaintiff and the members of the Class pre-judgment and post-judgment interest, as well as their reasonable attorneys' and experts' witness fees and other costs; and

(d)    Such other relief as this Court deems appropriate.

## JURY DEMAND

Plaintiff demands a trial by Jury.

Dated:  June 4, 2004                    **BERMAN DEVALERIO PEASE TABACCO BURT & PUCILLO**

Jeffrey C. Block, BBO #600747
Michael T. Matraia, BBO #633049
N. Nancy Ghabai, BBO #645050
One Liberty Square, 8th Floor
Boston, Massachusetts 02109
Phone: (617) 542-8300
Fax: (617) 542-1194

18

**ZWERLING, SCHACHTER &
ZWERLING, LLP**
Jeffrey C. Zwerling
Richard A. Speirs
Shaye J. Fuchs
845 Third Avenue
New York, NY 10022
Phone: (212) 223-3900


**LOCKRIDGE GRINDAL NAUEN P.L.L.P.**
Richard A. Lockridge
Karen H. Reibel
100 Washington Avenue, South
Suite 2200
Minneapolis, MN 55401
Phone: (612) 339-6900


**Attorneys for Plaintiff**

G:\Boston Case Folder\Securities\VasoActivePharm\DraftPleadings\COMPLAINT c

## CERTIFICATION OF PLAINTIFF

Charles Robinson ("Plaintiff") declares as to the claims asserted under the federal securities laws, that:

1.    Plaintiff has reviewed the Complaint and authorized its filing.

2.    Plaintiff did not acquire the securities that are the subject of this action at the direction of plaintiff's counsel or in order to participate in this private action or any other litigation under the federal securities laws.

3.    Plaintiff is willing to serve as a representative party on behalf of the class, including providing deposition testimony and testimony at trial, if necessary.

4.    The following includes all of my transactions in Vaso Active Pharmaceuticals (VAPH.PK) during the Class Period as defined in the Complaint:

| TRANSACTION (PURCHASE, SALE, EXCHANGE, CALL, PUT, ETC.) | TRADE DATE | PRICE | QUANTITY |
|---|---|---|---|
| Purchase | 03/29/2004 | $7.09 | 100 shares |

5.    During the three years prior to the date of this Certificate, Plaintiff has not moved to serve a representative party for a class in an action filed under the federal securities laws.

6.    Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

I declare, under penalty of perjury, that the foregoing is true and correct.

Executed this 17th day of May, 2004.

_Charles Robinson_

JS 44 (Rev. 3/99)

04 11221 RCL

# CIVIL COVER SHEET

The JS-44 civil cover sheet and information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

| 1. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| CHARLES ROBINSON, Individually and On Behalf of All Others Similarly Situated | VASO ACTIVE PHARMACEUTICALS, INC., JOHN J. MASIZ AND JOSEPH FRATTAROLI |

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF     Broward County, FL
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT     Essex County (MA)
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
Berman DeValerio Pease Tabacco Burt & Pucillo
One Liberty Square; Boston, MA 02109
(617) 542-8300

ATTORNEYS (IF KNOWN)

## II. BASIS OF JURISDICTION     (PLACE AN "X" IN ONE BOX ONLY)

1 ☐ U.S. Government Plaintiff

2 ☐ U.S. Government Defendant

3 ☒ Federal Question
    (U.S. Government Not a Party)

4 ☐ Diversity
    (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN "X" IN ONE BOX FOR PLAINTIFF
AND ONE BOX FOR DEFENDANT)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (PLACE AN "X" IN ONE BOX ONLY)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 151 Medicare Act<br>☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☒ 160 Stockholders Suits<br>☐ 190 Other Contract<br>☐ 195 Contract Product Liability | **PERSONAL INJURY**<br>☐ 310 Airplane<br>☐ 315 Airplane Product Liability<br>☐ 320 Assault Libel & Slander<br>☐ 330 Federal Employers Liability<br>☐ 340 Marine<br>☐ 345 Marine Product Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle Product Liability<br>☐ 360 Other Personal Injury | **PERSONAL INJURY**<br>☐ 362 Personal Injury - Med. Malpractice<br>☐ 365 Personal Injury - Product Liability<br>☐ 368 Asbestos Personal Injury Product Liability<br>**PERSONAL PROPERTY**<br>☐ 370 Other Fraud<br>☐ 371 Truth in Lending<br>☐ 380 Other Personal Property Damage<br>☐ 385 Property Damage Product Liability | ☐ 610 Agriculture<br>☐ 620 Other Food & Drug<br>☐ 625 Drug Related Seizure of Property 21 USC 881<br>☐ 630 Liquor Laws<br>☐ 640 R.R. & Truck<br>☐ 650 Airline Regs.<br>☐ 660 Occupational Safety/Health<br>☐ 690 Other | ☐ 422 Appeal 28 USC 158<br>☐ 423 Withdrawal 28 USC 157<br>**PROPERTY RIGHTS**<br>☐ 820 Copyrights<br>☐ 830 Patent<br>☐ 840 Trademark<br>**SOCIAL SECURITY**<br>☐ 861 HIA (1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW(405(g))<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g)) | ☐ 400 State Reapportionment<br>☐ 410 Antitrust<br>☐ 430 Banks and Banking<br>☐ 450 Commerce/ICC Rates/etc.<br>☐ 460 Deportation<br>☐ 470 Racketeer Influenced and Corrupt Organizations<br>☐ 810 Selective Service<br>☐ 850 Securities/Commodities/ Exchange<br>☐ 875 Customer Challenge 12 USC 3410<br>☐ 891 Agricultural Acts<br>☐ 892 Economic Stabilization Act<br>☐ 893 Environmental Matters<br>☐ 894 Energy Allocation Act<br>☐ 895 Freedom of Information Act |
| **REAL PROPERTY**<br>☐ 210 Land Condemnation<br>☐ 220 Foreclosure<br>☐ 230 Rent Lease & Ejectment<br>☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☐ 290 All other Real Property | **CIVIL RIGHTS**<br>☐ 441 Voting<br>☐ 442 Employment<br>☐ 443 Housing/ Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights | **PRISONER PETITIONS**<br>☐ 510 Motions to Vacate Sentence<br>**HABEAS CORPUS:**<br>☐ 530 General<br>☐ 535 Death Penalty<br>☐ 540 Mandamus & Other<br>☐ 550 Civil Rights<br>☐ 555 Prison Condition | **LABOR**<br>☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt Relations<br>☐ 730 Labor/Mgmt Reporting & Disclosure Act<br>☐ 740 Railway Labor Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl Ret Inc. Security Act | **FEDERAL TAX SUITS**<br>☐ 870 Taxes (U.S. Plaintiff or Defendant)<br>☐ 871 IRS - Third Party 26 USC 7609 | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice<br>☐ 950 Constitutionality of State Statutes<br>☐ 890 Other Statutory Actions |

## V. ORIGIN     (PLACE AN "X" IN ONE BOX ONLY)

☒ 1 Original Proceeding

☐ 2 Removed from State Court

☐ 3 Remanded from Appellate Court

☐ 4 Reinstated or Reopened

☐ 5 Transferred from another district (specify)

☐ 6 Multidistrict Litigation

☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE.
DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY.)

The claims alleged herein arise under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78(b) and 78t(a), and Rule 10b-5, 17 C.F.R. § 240.10b-5 promulgated thereunder.

## VII. REQUESTED IN COMPLAINT:

CHECK IF THIS IS A **CLASS ACTION**
☒ UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in Complaint
JURY DEMAND:  ☒ YES  ☐ NO

## VIII. RELATED CASE(S) (See instructions):
IF ANY

JUDGE     Reginald C. Lindsay

DOCKET NUMBER     1:04-cv-10708

DATE     June 4, 2004

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #_____ AMOUNT_____ APPLYING IFP_____ JUDGE_____ MAG. JUDGE_____

1. TITLE OF CASE (NAME OF FIRST PARTY ON EACH SIDE ONLY)   Robinson, et al v. Vaso Active Pharmaceuticals, et al.

2. CATEGORY IN WHICH THE CASE BELONGS BASED UPON THE NUMBERED NATURE OF SUIT CODE LISTED ON THE CIVIL COVER SHEET.  (SEE LOCAL RULE 40.1(A)(1)).

   _X_  I.    160, 410, 470, R.23, REGARDLESS OF NATURE OF SUIT.

   ___  II.   195, 368, 400, 440, 441-444, 540, 550, 555, 625, 710, 720, 730,        *Also complete AO 120 or AO 121
              740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.            for patent, trademark or copyright cases

   ___  III.  110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310,
              315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371,
              380, 385, 450, 891.

   ___  IV.   220, 422, 423, 430, 460, 510, 530, 610, 620, 630, 640, 650, 660,
              690, 810, 861-865, 870, 871, 875, 900.

   ___  V.    150, 152, 153.

3. TITLE AND NUMBER, IF ANY, OF RELATED CASES. (SEE LOCAL RULE 40.1(G)). IF MORE THAN ONE PRIOR RELATED CASE HAS BEEN FILED IN THIS DISTRICT PLEASE INDICATE THE TITLE AND NUMBER OF THE FIRST FILED CASE IN THIS COURT.

   In Re Vaso Active Pharmaceuticals Securities Litigation, 1:04-cv-10708-RCL

4. HAS A PRIOR ACTION BETWEEN THE SAME PARTIES AND BASED ON THE SAME CLAIM EVER BEEN FILED IN THIS COURT?

                                        YES ☐   NO **X**

5. DOES THE COMPLAINT IN THIS CASE QUESTION THE CONSTITUTIONALITY OF AN ACT OF CONGRESS AFFECTING THE PUBLIC INTEREST?   (SEE 28 USC §2403)

                                        YES ☐   NO **X**

   IF SO, IS THE U.S.A. OR AN OFFICER, AGENT OR EMPLOYEE OF THE U.S. A PARTY?

                                        YES ☐   NO ☐

6. IS THIS CASE REQUIRED TO BE HEARD AND DETERMINED BY A DISTRICT COURT OF THREE JUDGES PURSUANT TO TITLE 28 USC §2284?

                                        YES ☐   NO **X**

7. DO ALL OF THE PARTIES  IN THIS ACTION, EXCLUDING GOVERNMENTAL AGENCIES OF THE UNITED STATES AND THE COMMONWEALTH OF MASSACHUSETTS ("GOVERNMENTAL AGENCIES"),  RESIDING IN MASSACHUSETTS RESIDE IN THE SAME DIVISION? - (SEE LOCAL RULE 40.1(D)).

                                        YES **X**   NO ☐

   A.   IF YES, IN WHICH DIVISION DO ALL OF THE NON-GOVERNMENTAL PARTIES RESIDE?

        EASTERN DIVISION  **X**        CENTRAL DIVISION ☐        WESTERN DIVISION ☐

   B.   IF NO, IN WHICH DIVISION DO THE MAJORITY OF THE PLAINTIFFS OR THE ONLY PARTIES, EXCLUDING GOVERNMENTAL AGENCIES,  RESIDING IN MASSACHUSETTS RESIDE?

        EASTERN DIVISION ☐        CENTRAL DIVISION ☐        WESTERN DIVISION ☐

(PLEASE TYPE OR PRINT)

ATTORNEY'S NAME ____N. Nancy Ghabai, Esq._____

ADDRESS __One Liberty Square, Boston, MA 02109_____

TELEPHONE NO. ___(617) 542-8300_____

(MA_CategoryForm.wpd  - 11/27/00)